IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARIA PEET, ET AL. : | |
| : | |
| v. : | CIVIL ACTION NO. 21-2696 |
| : | |
| BOARD OF SUPERVISORS OF NEW : | |
| HANOVER TOWNSHIP : | |

McHugh, J.                                                                            October 29, 2021

## MEMORANDUM

This case arises out of a land dispute between Plaintiffs Maria Peet and James Holl and Defendant New Hanover Township over ownership of a road running through Plaintiffs' property. Litigation over the dispute has been ongoing in the Pennsylvania Court of Common Pleas of Montgomery County for more than eighteen months before this case was filed. The present action asserts a claim for compensation under the Takings Clause of the United States Constitution, mirroring the damages claimed in the underlying state action to quiet title. Necessarily, the Plaintiffs' success here depends on whether they have rights in the underlying property. Defendant New Hanover has moved the Court to abstain from exercising jurisdiction over the federal action under the *Colorado River* doctrine.[1] For the reasons set forth below, I will grant Defendant's motion and stay these proceedings pending resolution of the cases in the Court of Common Pleas.

**I.      Standard of Review**

The well-established standard elucidated in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) governs motions to dismiss under Fed. R. Civ. P. 12(b)(6).[2]

---

[1] The exercise of jurisdiction precedes a federal district court's capacity to rule on the merits. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-584 (1999). Because I find that *Colorado River* applies to this case, I will not address Defendant's argument that Plaintiffs' claim fails as a matter of law.

[2] Defendant New Hanover Township briefed its *Colorado River* abstention argument under both 12(b)(6) and 12(b)(1) standards of review. The law is unclear on whether subject matter jurisdiction

## II.    Procedural Posture

Litigation in this case began in January 2019 when Plaintiffs Maria Peet and James Holl brought two separate actions against Defendant New Hanover Township in the Pennsylvania Court of Common Pleas of Montgomery County. The first was a Petition for Preliminary Injunction, No. 2019-01486, and the second a Complaint in Quiet Title, No. 2019-01908.[3] Both actions assert the Plaintiffs' ownership interests in the property at 431 E. Moyer Road, Pottstown, PA 19464, and both actions allege that Plaintiffs were injured by New Hanover's treatment of a road that crosses their property as a public road. As to relief, the preliminary injunction sought to prevent

---

challenges under abstention doctrines are more appropriately brought under Rule 12(b)(6) or Rule 12(b)(1). *See Heritage Farms, Inc. v. Solebury Twp.*, 671 F.2d 743, 745 (3d Cir. 1982) (summarily characterizing dismissal on abstention grounds as "in the nature of a dismissal under Fed. R. Civ. P. 12(b)(6)"); 5B Wright & Miller, Fed. Prac. & Proc. Civ. § 1350 (3d ed. 2004) (nothing that "the scope of Rule 12(b)(1) is flexible, often serving as a procedural vehicle for raising various residual defenses" including abstention). The use of Rule 12(b)(1) is further complicated by the rule's bifurcated standard of facial and factual challenges—depending on whether the sufficiency of the pleadings or their factual premises are being challenged for jurisdictional purposes—which can't be neatly applied to *Colorado River* challenges which often occur before discovery and put at issue procedural facts of related state court proceedings, rather than the legal claims themselves or their factual predicates. *See Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) (only permitting "factual" challenges to "look beyond the pleadings to ascertain the facts," but limiting "factual" challenges to instances where the defendant has "filed [an] answer to the Complaint or otherwise presented competing facts."); *Beres v. Vill. of Huntley, Ill.*, 824 F. Supp. 763, 766 (N.D. Ill. 1992) ("[A] motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) based on abstention does not fit into the two types of jurisdictional attacks generally raised under Rule 12(b)(1), because the challenge is not to either the facial insufficiency of the complaint nor to the factual basis pleaded in the complaint. The rationale for abstention is based on principles of comity and federalism.").

I will therefore follow the only precedential guidance I can identify—the Third Circuit's opinion in *Heritage Farms*—and decide the pending motion under the standard of Rule 12(b)(6). 671 F.2d 7 at 745. Under this standard, I "must accept all of the complaint's well-pleaded facts as true, but [I] may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Notably, under Rule 12(b)(6) I may consider the related state court proceedings as matters subject to judicial notice. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007); *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (noting that the district court may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case") (quoting 5B Wright & Miller, Fed. Prac. & Proc. § 1357 (3d. 2004)). Under 12(b)(6) the burden of persuasion rests and remains with the defendant and does not shift to the plaintiff to prove jurisdiction once challenged as it does under 12(b)(1). *See Davis v. Wells Fargo*, 824 F.3d 333, 348-349 (3d Cir. 2016).

[3] The Complaint in Quiet Title also included a neighbor, William Bailey, as a defendant.

New Hanover from conveying the property to any third parties. The parties stipulated to a dismissal of that action. The quiet title action seeks both a declaration as to Plaintiffs' ownership interests and monetary damages related to New Hanover's incursion into their alleged property. The quiet title action is ongoing. There have been several rounds of preliminary objections and amendments to the complaint. The most recent complaint is the second amended complaint ("State Complaint"), filed in December 2020. In September 2021, the state court struck New Hanover's preliminary objections and ordered New Hanover to answer the State Complaint.

The pending case in this Court was filed in June 2021 when preliminary objections in the state action were pending. It presents a single claim seeking compensation for New Hanover's alleged taking of the same property in violation of the Fifth Amendment of the U.S. Constitution. ECF 1, at 7-8.

### III. Discussion

*Colorado River* abstention requires a two-step inquiry to determine whether such prudential factors exist to overcome "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817 (1976). First, I must determine whether the state and federal actions are parallel. *See Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 307 (3d Cir. 2009). If they are parallel, I must next decide whether abstention is proper by weighing the six factors set forth in *Colorado River* and its progeny. *See id.* at 307-08; *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 16 (1983). For the reasons set forth below, I find that the actions are parallel and that the controlling factors weigh in favor of abstention.

  A. The State and Federal Actions are Parallel.

In determining whether to abstain under *Colorado River*, the threshold question is whether there is an ongoing, parallel state proceeding. Proceedings generally are considered parallel when

3

they involve "substantially identical claims [and] nearly identical allegations and issues." *Nationwide Mut. Fire*, 571 F.3d at 307 (cleaned up). The Third Circuit has "never required complete identity of parties for abstention." *IFC Interconsult, AG v. Safeguard Int'l Partners, LLC*, 438 F.3d 298, 306 (3d Cir. 2006) (internal citation omitted). In a non-precedential opinion, a panel of the Third Circuit has suggested that plaintiffs should also be "seek[ing] the same remedies." *Golden Gate Nat. Sr. Care, LLC v. Minich ex rel. Estate of Shaffer*, 629 Fed.Appx. 348, 350 (3d Cir. 2015) (citing *Harris v. Pernsley*, 755 F.2d 338, 346 (3d Cir. 1985)).

As an initial matter, 10 out of 11 paragraphs in the present Complaint laying out the factual predicates of Plaintiffs' federal claim restate paragraphs of the State Complaint. Most are near word-for-word recapitulations,[4] with the remainder summarized to remove elements of tort and trespass claims extraneous to the takings claim.[5] The final factual paragraph doesn't have a correlate State Complaint paragraph because it merely recounts a position taken by New Hanover in the state court pleadings. *See* Complaint ¶ 18 n.10. Plaintiffs concede that the factual allegations of the Complaint mirror those of the State Complaint. ECF 9, at 16 ("While the factual allegations in that case are identical in some instances to those in this case…"). Thus, it is evident from the face of the pleadings that the factual issues encompassed in both actions are the same.

An analysis of the legal issues presented yields much the same result. First, I note that the core premise of the takings claim—that the Plaintiffs hold the property rights to the road at issue— is squarely before the Court of Common Pleas through the action to quiet title. Necessarily, this issue must be determined before any judgment on the takings claim could be rednered. *See Newark Cab Ass'n v. City of Newark*, 901 F.3d 146, 151 (3d Cir. 2018) ("To succeed on a takings claim,

---

[4] *Compare* Complaint ¶¶ 8-13, 16-17, *with* State Complaint ¶¶ 8, 9, 10, 10(a), 10(d), 15, 17, 18, 28, 29, respectively.

[5] *Compare* Complaint ¶¶ 14, 15 *with* State Complaint ¶¶ 19-21.

4

the plaintiff must first show that a legally cognizable property interest is affected by the Government's action in question.") (cleaned up).  The basic order of the steps necessary to rule on the federal claim thus reinforces the parallel nature of these actions—that is, to decide the takings claim, I would first have to make a conclusive ruling on the timeline of the property ownership, which in turn would have preclusive implications for the state court proceedings presently addressing that very issue.  Furthermore, the compensatory relief sought for the federal takings claim appears to be duplicative of relief sought in the state action.  Specifically, the Plaintiffs have sought monetary damages in trespass from New Hanover in the state action that would overlap with any monetary damages in takings from the federal action.[6]  Plaintiffs recently defeated preliminary objections in the state litigation, and so their full array of claims and requested remedies remain viable in those proceedings.  Order of Sept. 17, 2021, *Peet v. Board of Supervisors of New Hanover Township*, No. 19-1908, Doc. 64 (Comm. Pls., Mont. Cty.).

Plaintiffs argue that abstention should not apply because "the causes of action, the elements of those causes of action, the claims for relief and legal standards are also often different (as are the defenses)" between the two proceedings.  ECF 9, at 16.  But the fact that there is not perfect alignment between the causes of action does not frustrate a finding that the actions are parallel.  *See Ingersoll-Rand Fin. Corp. v. Callison*, 844 F.2d 133 (3d Cir. 1988) (recognizing parallel actions despite different legal claims and finding stay appropriate to ensure any remaining legal claims can be heard).  This is particularly the case where the factual determinations necessary to decide the legal claims in both cases are substantially identical.  *See Clark v. Lacy*, 376 F.3d 682,

---

[6] As Justice Thomas has pointed out, the Supreme Court's recent Takings Clause jurisprudence has not "foreclose[d] the application of ordinary remedial principles to takings claims and related common-law tort claims, such as trespass." *Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2180 (2019) (Thomas, J., concurring).

687 (7th Cir. 2004) (actions parallel where "they rely on the same factual predicate to raise substantially similar legal issues against substantially similar parties").  In a non-binding opinion, a panel of the Third Circuit concluded that a federal action asserting due process, equal protection, and federal takings claims was parallel to state action for inverse condemnation.  *Timoney v. Upper Merion Twp.,* 66 F. App'x 403 (3d Cir. 2003).

Finally, I note that the parties in both actions are almost identical.  The only difference is that an additional individual defendant – a neighboring landowner - is named in the state action.  But this does not change my analysis.  "Strict identity between parties and claims is not necessary for pending proceedings to be substantially similar."  *Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 284 n.8 (3d Cir. 2017); s*ee also Ryan v. Johnson*, 115 F.3d 193, 196 (3d Cir 1997) (joinder of third-party defendants in state court action who might not be joined in federal court action did not defeat parallelism); *Flint v. A.P. Desanno & Sons*, 234 F. Supp. 2d 506, 510 (E.D. Pa. 2002) ("The presence of additional parties in the state action does not destroy the parallel nature of the cases when all of the parties in the federal action are also parties in the state action.").

Therefore, I find that the pending litigation in Pennsylvania state court is parallel.

B.  The *Colorado River* factors weigh in favor of abstention.

Now that I have determined that the actions are parallel, I must address the controlling factors, "with the balance heavily weighted in favor of the exercise of jurisdiction."  *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).  Those factors, set forth in *Colorado River* and its progeny, include the following:

> (1) in an in rem case, which court first assumed jurisdiction over [the] property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or

state law controls; and (6) whether the state court will adequately protect the interests of the parties.

*Nationwide Mut. Fire Ins. Co.*, 571 F.3d at 308 (internal citation omitted).  I note that "[n]o one factor is necessarily determinative," *Colorado River*, 424 U.S. at 818, and that "the weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case."  *Moses Cone*, 460 U.S. at 16.  Moreover, "a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise . . . is required." *Colorado River*, 424 U.S. at 818–19.  As will be discussed below, the first, fourth, fifth, and sixth factors together outweigh the obligation to exercise jurisdiction, and therefore counsel toward abstention.

**First Factor:** Whether an action to quiet title is an assumption of jurisdiction over property reflects a surprisingly complex legal issue.  Having considered the relevant Pennsylvania precedent, I conclude that the pending state court action is one in rem under state law, and so the first factor, though not decisive, weighs in favor of abstention.

In *Donovan v. City of Dallas*, 377 U.S. 408 (1964), from which the *Colorado River* Court derives this factor, the assumption of jurisdiction over property refers to "proceedings *in rem* or *quasi in rem*." *Id.* at 412.  These forms of jurisdiction go back to common law distinctions among *in personam, in rem*, and *in quasi rem* jurisdiction reflective of differing modes of relief.  Generally speaking, *in personam* jurisdiction refers to actions for personal liability, Restatement (Second) of Judgments § 5 cmt. b (1982), *in rem* refers to determinations of property claims "against all the world," *id.* § 6 cmt. a, and *quasi in rem* refers to property claims among the parties to the action, *id.*  Under these definitions, the underlying quiet title action would appear to be either *in rem* or *quasi in rem*, as it requests as relief a judicial declaration and a recorded deed granting the Plaintiffs

7

the rights to the contested property "absolutely in fee," and also the superiority of their rights against any claims made by the Defendant. State Complaint ¶ 34(a)-(b).

Such distinctions are recognized by Pennsylvania law. Although Pennsylvania courts have not directly addressed whether quiet title actions are *in rem* or *quasi in rem* proceedings, the Pennsylvania Supreme Court has suggested a broad definition when assessing whether a proceeding is sufficiently *in rem* or *quasi in rem* to trigger exclusive jurisdiction of the first court to claim jurisdiction, noting that the "line of distinction … is not to be drawn with academic nicety. The question is rather one of practical regard for the orderly and efficient administration of justice." *See Thompson v. FitzGerald*, 198 A. 58, 66 (Pa. 1938). Even intangible rights may be considered a "res" which "may be merely a status, such as a marriage, or the probate of a will." *Id.* at 64. There are decisions that seem to treat quiet title actions as *in rem* or *quasi in rem* proceedings. For instance, in *Alpern v. Coe*, 42 A.2d 542 (Pa. 1945) the Pennsylvania Supreme Court held that a suit where the real relief sought was the conveyance of title to real property through a constructive trust and recording of a deed was an action *in rem* or *quasi in rem* for purposes of service and jurisdiction. *See id.* at 544. Pennsylvania courts have also referred in passing to quiet title actions as *in rem*. *See, e.g., Stefanick v. Minucci,* 333 A.2d 920, 922 (Pa. 1975) (describing the case before it as one for specific performance for a contract for the sale of real property and "not one *in rem* to quiet title"); *Signal Consumer Discount Co. v. Babuscio,* 390 A.2d 266, 270 n. 9 (Pa. Super Ct. 1978) (referring in passing to the "*in rem* nature of a quiet title claim"). And because the power to rule upon the status of a property depends on the court having jurisdiction, it is worth noting that Pa. R. Civ. P. 410 permits service by posting at the site of the affected real property in actions to quiet title, when it cannot be accomplished by regular means. This reinforces the proposition that Pennsylvania views such actions as uniquely tied to the property. I will therefore treat the

underlying quiet title action as an *in rem* or *quasi in rem* action to the extent it seeks to adjudicate the rights related to the property at issue.[7]

I am also convinced that the weight to be afforded to this factor is weighty but not decisive. Even prior to *Colorado River*, the Supreme Court recognized that concurrent jurisdiction over *in rem* or *quasi in rem* matters presented serious issues. *Colorado River* incorporated much of this jurisprudence, noting that "the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts," before going on to announce the other three factors that became part of the doctrinal test. 424 U.S. at 818 (citing *Donovan v. City of Dallas*, 377 U.S. 408, 412 (1964); *Princess Lida v. Thompson*, 305 U.S. 456, 466 (1939); *United States v. Bank of New York & Trust Co.*, 296 U.S. 463, 477 (1936)). Parallel to *Colorado River*, a doctrine developed out of *Princess Lida*, a case on which the Supreme Court partially relied *Colorado River*. That doctrine has been interpreted as "a 'mechanical rule' which requires that the court in which the second suit is brought yield its jurisdiction if the requisite 'property' showing is made." *Dailey v. Nat'l Hockey League*, 987 F.2d 172, 176 (3d Cir. 1993). In general, *Princess Lida* has been applied to actions that regard the "'administration and restoration of corpus' and … not 'merely an adjudication of a party's right or interest.'" *Id.* Because this case involves the adjudication of rights and interests to the property at issue, it doesn't fall entirely within the contours of *Princess Lida,* and therefore a mechanical or *per se* presumption of abstention should not apply just because the action is *in rem* or *quasi in rem*.[8] Nonetheless, the Supreme Court's

---

[7] On this point, it should be noted that these legal formalisms have become less relevant following the United States Supreme Court collapsing the categories of *in rem* and *in personam* for purposes of personal jurisdiction under the Due Process Clause. *See Shaffer v. Heitner*, 433 U.S. 186 (1977) (applying the "fair play and substantial justice" standard to *in rem* actions). Thus, it is unsurprising that state law has not developed further in these areas.

[8] The Third Circuit has not directly addressed this issue. The Ninth Circuit has and established a rule that "the first prong of the *Colorado River* abstention test is dispositive" in quiet title actions where the state court exercises jurisdiction first. *40235 Washington St. Corp. v. Lusardi*, 976 F.2d 587, 589 (9th Cir.

reliance on *Princess Lida* in *Colorado River* and the development of a parallel doctrine of mechanical abstention weighs strongly in favor of the presumption that the first competent court to take jurisdiction over a property matter should do so exclusively, even if abstention is not automatic.  *See also R & R Cap., LLC v. Merritt*, No. CIV. A. 07-2869, 2007 WL 3102961, *12-13 (E.D. Pa. Oct. 23, 2007) (discussing how the *Princess Lida* doctrine impacts the analysis of the first factor in *Colorado River*).[9]

**Second Factor:** The federal forum here presents no inconvenience to either party and therefore weighs in favor of jurisdiction.  Both parties are located in the Eastern District of Pennsylvania and neither would be unduly burdened in accessing this Court.

**Third Factor:** "[T]he 'avoidance of piecemeal litigation' factor is met ... only when there is evidence of a strong federal policy that all claims should be tried in the state courts."  *Ryan v. Johnson*, 115 F.3d 193, 197-98 (3d Cir. 1997).  At this time there is not such a strong federal policy that the state court should have primary jurisdiction over both federal and state takings claims, and therefore this factor weighs in favor of exercising jurisdiction.[10]

---

1992).  My reading of the relation between *Colorado River* and *Princess Lida* requires a more nuanced approach.

[9] The *res* in question here is a thoroughfare that a public entity claims ownership of, which, in addition to the general issue of jurisdiction over a *res*, also implicates important state interests both as to the management of territory under public control and as to the ownership, administration, and planning of transportation networks.  The implication of important state interests is not a factor in *Colorado River* abstention; however, it is a factor in *Younger* abstention which looks to (1) ongoing state judicial proceedings that (2) implicate important state interests where (3) there is an adequate opportunity to raise federal claims.  *See Kendall v. Russell*, 572 F.3d 126, 131 (3d Cir. 2009).  Because neither party has briefed the potential application of *Younger*, I will not rely on the doctrine for my abstention here.  But I note that the comity issues that *Younger* involves are present on the facts of this case, specifically as regards the jurisdiction over property claimed by the public entity, and favor abstention.

[10] The Supreme Court previously suggested that such a policy might apply to takings clause litigation for parallel state and federal claims being litigated in state courts.  *See San Remo Hotel, L.P. v. City & Cty. of San Francisco, Cal.,* 545 U.S. 323, 346 (2005).  But the Supreme Court's decision in *Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162 (2019), abandoned the requirement that state courts must make takings clause determinations in the first instance.

**Fourth Factor:** Plaintiffs Peet and Holl filed their actions in the state court in December 2019, more than a year and a half ago.  The pleadings in this Court have largely been copied and pasted from those pleadings, and the documentary evidence attached to the pleadings and the foregoing briefings reflects materials previously submitted in those proceedings.  This factor therefore weighs in favor of abstention.

**Fifth Factor:** Though the pleadings frame this case as a takings claim under the Fifth Amendment of the U.S. Constitution, it is clear from the record in the parallel proceedings that underlying state law determinations will likely be dispositive of the federal claim. State law therefore controls this case.  "To succeed on a takings claim, the plaintiff must first show that a legally cognizable property interest is affected by the Government's action in question." *See Newark Cab Ass'n v. City of Newark*, 901 F.3d 146, 151 (3d Cir. 2018) (cleaned up); *see also Knick*, 139 S. Ct. at 2167.  As is clear from the state court proceedings, the central issue in this litigation is who owned the roadway in dispute and when.  This determination appears to involve weighing an array of factual materials that implicate matters intimate to public administration including—as put in the record by both parties here and in the parallel proceedings—survey maps, deeds, handwritten minutes from meetings in 1954, PennDOT maps, road maintenance records, and historical and contemporaneous correspondence of township officials.  The legal questions

---

Plaintiffs' brief contains extensive discussion of both *Knick* and *Pakdel v. City & Cty. of San Francisco, Cal.,* 141 S. Ct. 2226 (2021) (finding state administrative exhaustion is not a prerequisite to ripeness for a federal takings claim).  Plaintiffs advance the proposition that not only is there no strong federal policy against piecemeal litigation of takings claims in state courts, but there is instead now a strong federal policy that federal courts can never abstain from cases bringing takings claims, irrespective of any other constitutional or prudential concerns. *E.g.* ECF 9, at 17 ("As stated above, *Pakdel* 'guarantees' a federal forum for Takings Clause cases.").  Plaintiffs extend these decisions well beyond their holdings. The Supreme Court's decisions in *Knick* and *Pakdel* certainly removed procedural impediments to takings claims.  It does not follow that they made federal courts the exclusive, preferred, or primary forums for takings claims.  And they certainly did not create a right for Plaintiffs to short-circuit state court proceedings that Plaintiffs themselves initiated more than eighteen months ago.

presented are fine-pointed issues of state law and public administration including the authenticity and relevance of the above public records, the operation of 53 P.S. § 67307(a), and the application of the Pennsylvania common law doctrine of prescription.

If it is found under state law that the Plaintiffs owned the roadway at issue at the time that New Hanover allegedly exercised eminent domain over it, then Plaintiffs will most likely prevail on their takings claim.[11]  On the other hand, an adverse determination on the ownership issue at the time of taking would render Plaintiffs' takings claim moot.  *See Palazzolo v. Rhode Island*, 533 U.S. 606, 628 (2001) ("[I]t is a general rule of the law of eminent domain that any award goes to the owner at the time of the taking, and that the right to compensation is not passed to a subsequent purchaser.").  Because the issues of state law will therefore be outcome determinative as to the availability of remedies under federal takings law, I find that state law controls here, which weighs in favor of abstention.[12]

**Sixth Factor:** "[T]his factor is normally relevant only when the state forum is *in*adequate. … When the state court is adequate, however, the factor carries little weight." *Ryan v. Johnson*, 115 F.3d 193, 200 (3d Cir. 1997).  In their discussion of *Knick* and *Pakdel*, the Plaintiffs appear to contest this factor on the basis of federal court expertise with constitutional claims. ECF 9, at 16.  The fact that federal courts have more experience with constitutional claims hardly renders state court inadequate to decide them.  More importantly, where the issue likely to be controlling is one

---

[11] The parties do not appear to dispute, either in this proceeding or the state proceedings, that New Hanover has not compensated Plaintiffs for the rights to the roadway.

[12] The separate abstention doctrine established by *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941) does not squarely apply here, but the result I reach is consistent with its principle that federal courts should avoid deciding federal constitutional questions where "a definitive ruling on a state issue would terminate the controversy," *id.* at 498, and a state court is positioned to issue such a ruling, *id.* at 499-500.

governed by state law, state courts are at a minimum equally qualified to rule. Therefore, as to the comparatively limited weight this factor affords, I find it weighs in favor of abstention.

Careful analysis of each of the *Colorado River* factors persuades me to stay this matter pending the outcome of the state litigation, where determinations as to the ownership of the property at issue and the timeline of such ownership under Pennsylvania common and statutory law will provide significant clarity as to whether Plaintiffs have a claim under the Takings Clause.

### IV.     Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss will be granted in part: Plaintiffs' claims will be stayed pending resolution of the state court proceedings. An appropriate order follows.

/s/ Gerald Austin McHugh  
United States District Judge